510 P.2d 415

**Alvaro M. SIQUEIROS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Aero-Tech, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 562.**

Court of Appeals of Arizona, Division 1, Department A.

May 31, 1973.

Rehearing Denied July 3, 1973.
Review Denied Sept. 18, 1973.

Bernard I. Rabinovitz, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by James B. Long, Phoenix, for respondents employer and carrier.

DONOFRIO, Presiding Judge.

This is a writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona denying petitioner Alvaro M. Siqueiros' motion to reopen his claim.

On June 20, 1969 petitioner, 20 years of age, suffered an industrial injury to his back while he was bending over picking up a large can of grease. The claim was accepted for benefits by the respondents. On September 22, 1969 respondent carrier issued a notice of claim status terminating temporary compensation as of July 9, 1969 for the reason that petitioner had been released for, or had returned to, regular work without wage loss. There was no finding made concerning permanent disability. Thereafter, on October 30, 1969 respondent issued its notice of claim status terminating medical benefits as of September 9, 1969. Both of said notices became final without protest.

Sometime in the fall of 1969 petitioner went to work for Carter's Motors, a company in Clifton, Arizona. Around February 1, 1970, after he had been working a few months, he bent over to pick up a small can of grease and suffered a pain in his back in the same area of his prior injury. Although there is confusion on this point, petitioner testified he did not injure himself by actually picking up the grease can, but that the injury occurred when he stooped over to pick it up.

On March 16, 1970 petitioner filed a petition to reopen, to which he attached the following letter from Dr. Richard Toll:

"Mr. Siqueiros sustained an injury to the back on 6–20–69. He was followed by me through 9–6–69 at which time the case was closed with zero percent of impairment. At that time he was asymptomatic with a normal physical examination. He was seen again by me on 2–13–70 at which time he stated that about two weeks ago he was bending over lifting a very small can of grease and he had a recurrence of pain in the back with radiation into the anterior thigh bilaterally. There had been no numbness or no localizing weakness. To examination there is very definite limitation of motion and lift of the back with paraspinal muscle spasm present, tenderness at the lumbosacral area. Straight leg

raising could be carried to 70 degrees bilaterally. The neurological examination was normal.

"I do not believe that the lifting of this can of grease was a precipitating factor. I believe this is a recurrence of his primary injury. I recommend that the case be reopened for further treatment."

After the carrier issued its denial, a timely petition for hearing was filed and a formal hearing was held on July 3, 1970. On July 10, 1970 the hearing officer issued his decision denying reopening of the claim. This was affirmed by the Commission and this writ of certiorari followed.

The sole question presented is whether there is any reasonable evidence in the record to support the Commission's finding that the petitioner has not sustained a new, additional or previously undiscovered condition within the meaning of the Arizona Workmen's Compensation Act.

A.R.S. § 23–1061, subsec. H, insofar as pertinent, reads as follows:

"An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition, which petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim. . . ."

In order to reopen, the law is clear that petitioner must show by a preponderance of the evidence: 1) a new disability, and 2) a causal relationship between the new disability and the *original* industrial episode. London v. Industrial Commission, 71 Ariz. 111, 223 P.2d 929 (1950). He must also show a change in his physical condition since the last award. Our Supreme Court, in Harris v. Industrial Commission, 75 Ariz. 71, 251 P.2d 890 (1952), a back injury case, stated:

" . . . In none of the subsequent petitions of petitioner was it claimed that there had been any change in the physical condition of his back since the original award, i. e., new, additional or previously undiscovered disability. *It is only when such change is shown that the commission has jurisdiction to reconsider such a case.* Nevitt v. Industrial Commission, 70 Ariz. 172, 217 P.2d 1039." (emphasis added) 75 Ariz. at 74, 251 P. 2d at 892.

True, the Commission denied reopening in that case, but it was based on a conflict of evidence as the following will show:

"Even though we should not take cognizance of the fact that the findings and award of the commission relating to petitioner's back injury are res judicata, the sharp conflict in the evidence on the last hearing before the commission on the question of whether petitioner was suffering from a disability to his back, attributable to the original accident, for which compensation was denied, makes its findings and award binding on us. Bishop v. Industrial Commission, 59 Ariz. 331, 127 P.2d 129; Womack v. Industrial Commission, 73 Ariz. 385, 241 P.2d 814." 75 Ariz. at 74, 75, 251 P.2d at 892.

We believe in the light of the law petitioner in the instant case has borne his burden of establishing a case for reopening. A reading of the record shows that on June 20, 1969 petitioner suffered an industrial injury to his back while he was bending over picking up a can of grease which was described in the original workman's report, to wit: "Injured back while lifting heavy object, weighing about 80 to 100 lbs." The claim was accepted for benefits, and later by notice of claim status was terminated as of July 9, 1969, as petitioner was released for regular work. Thereafter by notice of claim status medical benefits were terminated as of September 9, 1969. Dr. Toll, (orthopedic surgeon), who treated petitioner at that time discharged him. According to Dr. Toll's letter, supra, petitioner was at that time "asymptomatic with a normal physical ex-

amination." The notices of claim status became final without protest.

About February 1st of 1970 petitioner was in Clifton, Arizona, working for another employer when he started to bend over to pick up a small can of grease and felt a pain in his back in the same area of his prior injury. Upon examination Dr. Toll found definite limitation of motion and lift of the back with paraspinal muscle spasm and tenderness at the lumbosacral area.

At the hearing on this matter the referee heard only two witnesses, the petitioner and Dr. Toll. The evidence appears uncontradicted. We set forth some excerpts from Dr. Toll's testimony:

"Q All right, Doctor. We are bogged down in a legal hassle here over whether or not what happened to him in February of 1970 could be classified as a new accident, or whether it was the same injury, merely recurrence of the same injury.

"Can you give me an opinion based on a reasonable medical probability as to whether or not the condition that you observed in February 1970 was related to the incident on or about the 1st of February, 1970, with the grease can?

"A Yes.

"Q Or, the previous injury back in June of 1969?

"A Yes, I have an opinion.

"Q And what is that?

"A I believe that reasonable medical probability indicates that the episode with the grease can was aggravation of a pre-existing injury.

    \*    \*    \*    \*    \*    \*

"Q (By Mr. Rabinovitz) Doctor, when you say that you feel it is an aggravation of a pre-existing condition, can you just spell that out a little bit more for us?

"A I think the simplest way to spell it out would be to say that I believe there is a reasonable medical probability that had Mr. Siequeiros not had the acute severe relatively prolonged injury of 1969, lifting the small can of grease in February of 1970 would not have brought on his back symptoms.

"And therefore, because of this reasoning, I think that it is not a new injury but related to the injury of 1969.

"Q (By Mr. Phillippo) And, Doctor, could you add one other matter and include that in your opinion: That, if he were not on the job bending over it wouldn't have happened at the particular time it did, either, is that correct?

"A Would you repeat that, please?

"Q Let me clear it up this way: Are you aware that, that the claimant was working at the time of his injury?

"A Which injury?

"Q Do you have a history of that, of the—excuse me—the February incident?

"A Yes.

"Q You are aware of that?

"A Yes.

"Q And I believe you have a history that, in February, he bent over to pick up the grease can.

"A Correct.

    \*    \*    \*    \*    \*    \*

"Q And if he had not bent over to pick up that grease can, would that change your opinion?

"A No, I think the opinion stands the same. I don't think that, that the episode of February is a single unrelated incident. It wouldn't have mattered to me whether he bent over to tie his shoe or pick up a grease can or slide in and out of his automobile, I think it all goes back to the more acute serious injury of 1969. And we see this all the time when a man has an acute severe in-

jury, then, an aggravation either at or not at work, we relate back to the original injury.

"And I think this is exactly what happened in this case. It wouldn't have mattered to me one bit whether he had been at work or at home when the pain came on, it still related to the injury of 1969.

\* \* \* \* \* \*

"Q And then, though, in September of 1969 he was, as you found, asymptomatic, and also your examination throughout was negative, and there was a full range of motion and no spasm, and you discharged him with zero percentage impairment. This doesn't affect the opinion at this time?

"A Not in the slightest.

"Q And why is that, Doctor?

"A Because we frequently see people who become completely asymptomatic with injured disks that have partially healed or receded to the point where they no longer cause symptoms and then with slight activity in the future have a recurrence. It's not at all unusual."

The hearing officer in his finding No. 8 stated:

"8. Where there is an injury that is the result of a succeeding external cause such as bending to pick up an object, the applicant suffers an injury by a new accident within the meaning of the Arizona Workmen's Compensation Law; Davis v. The Industrial Commission; 2 Ariz.App. 148, 406 P.2d 866 (1965)."

It is apparent that the hearing officer was relying heavily on the Davis case as establishing as a matter of law that the bending over by petitioner to pick up the small can of grease caused him to suffer a new accident, irrespective of the uncontradicted medical testimony that the symptoms petitioner now has are an exacerbation of the prior industrial injury and caused by it, an injury which the doctor had thought was cured when he released petitioner. We would say at this point that according to the doctor's testimony it is a new injury only in the sense that it was not manifested before.

Our reading of the cases in this area shows that there is a fine line between an exacerbation or aggravation of a preexisting injury which forms the basis of a reopening, and a subsequently unrelated accident which forms the basis of a new injury. It would serve no purpose for this Court to distinquish the many cases on this subject, but because of the reliance by the hearing officer on certain law it becomes necessary to review the following recent cases which are involved.

In the recent case of Caganich v. Industrial Commission, 108 Ariz. 580, 503 P. 2d 801 (1972), the claimant, a meat cutter, had an industrial injury to his arm in 1958. Ten years later when he attempted to lift a round of meat off a hook he felt his arm go limp. His doctor diagnosed his condition as epicondylitis, which is inflamation of the tendons that attach to the bony prominence that is referred to as the medial epicondyle. Claimant in Caganich argued that his later episode was merely an exacerbation of the previous arm injury of 1958. Unlike the instant case, the issue there was what date should be used upon which to base claimant's monthly wage, but like the instant case, claimant filed a petition to reopen in the original injury claim and the Commission denied reopening on the basis that the later episode was a new injury.[1] The Supreme Court affirmed the award, stating:

"Although the unequivocal testimony of the doctor indicates a mere extension of the old injury, we are of the opinion that

---

1. It is interesting to note that in Caganich the majority of the Supreme Court cited Davis v. Industrial Commission, 2 Ariz. App. 148, 406 P.2d 866 (1965), which was authored by its member, Justice Cameron, while he was on the Court of Appeals. Justice Cameron, however, dissented in Caganich.

the facts indicate that a *new* injury occurred on July 30, 1968." (emphasis added) 108 Ariz. at 581, 503 P.2d at 802.

Were the issues and type of injury the same in the instant case we would affirm on the basis of Caganich. We believe, however, that this case is distinguishable not only because the instant case does not precisely involve the fixing of a date of injury to apply a monthly wage, but also because the medical evidence is uncontradicted that the disability is not the result of a new injury, industrially speaking, a question that was not so, for instance in Davis, which was cited by the Supreme Court. In Davis the medical testimony, right or wrong, was that the injury was a new injury. This, incidentally, may have accounted for Justice Cameron's dissent in Caganich. In the instant case Dr. Toll's testimony is that it was not a new injury.

The case at bar is more like Tanner Bros. Contracting Co. v. Industrial Commission, 14 Ariz.App. 309, 483 P.2d 50 (1971), (review denied May 25, 1971). In Tanner the workman reinjured his back. At the time of a second injury he was loading a water truck and when he bent over to open a valve he suddenly suffered a pain in his back and leg and was unable to walk or stand. The petitioner-employer contended that the respondent employee sustained a new injury in that episode while employed by another company. The medical evidence was to the effect that the episode was not a new and separate injury, but that it was an acute aggravation of a continuing injury. This Court followed the medical evidence and held that it was not a new injury.

To reiterate, what we have *sub judice* is a situation where prior to the present episode (which precipitated the current change, i.e., was the onset of the present symptoms) petitioner's condition due to the first industrial injury was asymptomatic. He then makes a movement to pick up an object and experiences new symptoms causally related to that industrial accident which brought about his condition in the first place, and the hearing officer now calls the present episode a new injury in the industrial sense, that is, a new accident, on the strength of the Davis case which he cites in his findings.

The evidence is, 1) by the doctor that what is now manifested is all because of the first injury, and 2) by petitioner that he never actually picked up the small can but merely started to do it when the symptoms appeared. We can conclude from this only that the condition was previously undiscovered or because it now comes to light for the first time that it is a new condition, not in the sense that there is a new external injury or accident, but in the sense that it is a newly manifested condition attributable to the previous industrial episode, thus within the reopening statute.

In summary, the law is clear that the medical causation question can be resolved only by expert medical testimony, and that the Commission has an obligation not to ignore all the sworn evidence of the hearing without further hearing or medical evidence. We are unable to find facts which apparently the Supreme Court found in Caganich to show a new injury. The award therefore is not reasonably supported by the evidence and must be set aside.

It is to be noted that this case does not involve an issue between two carriers. We can envision in such a case that the doctor for one carrier might classify an episode as bringing to light a condition caused by an old injury, and the doctor for the other carrier might classify it as a completely new injury altogether. In this respect we might add that this area of causation as to whether an episode is a new injury or an aggravation of an old injury, newly discovered, is most perplexing. It may be that the better solution in such an instance would be to find liability on both carriers and leave it up to the carriers to apportion their liability. This may be a legislative matter. It is not our prerogative, however, to pass upon this question as it is not involved herein.

Award set aside.

OGG and STEVENS, JJ., concur.