585 P.2d 1247

**HUGHES AIRCRAFT COMPANY,**
**Petitioner Employer,**

**Argonaut Insurance Co., Petitioner**
**Insurance Carrier,**

**v.**

**The INDUSTRIAL COMMISSION of**
**Arizona, Respondent,**

**Donald D. Sharp, Respondent Employee.**

**No. 1 CA–IC 1847.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 12, 1978.

Rehearing Denied Oct. 12, 1978.

Review Denied Oct. 31, 1978.

Everett, Bury & Moeller, P. C. by Marshall Humphrey, III, J. Michael Moeller, Tucson, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Davis, Eppstein & Tretschok, P. C. by Patrick R. McNamara, Tucson, for respondent employee.

## OPINION

JACOBSON, Judge.

The question presented in this review by special action of an award of the Industrial Commission is whether a report prepared by a non-testifying doctor may properly supply evidence to support the hearing officer's decision granting a reopening of claimant's claim.

Respondent employee, Donald D. Sharp, suffered a lumbosacral strain in the course of his employment with petitioner employer, Hughes Aircraft Company on November 29, 1973. The employee returned to work and was given conservative medical treatment until early 1975 when the claim was closed with no permanent impairment.

On December 30, 1976, the employee filed a petition to reopen this claim based on a new, additional or previously undiscovered disability or condition which he alleged was causally related to the November 29, 1973 injury. Petitioner carrier, Argonaut Insurance Company, denied the petition by its notice of claim status dated January 24, 1977.

Following the employee's timely protest and request for hearing, a formal hearing was held before the Industrial Commission on June 30, 1977. On that date, the hearing officer entered his award granting the petition to reopen. After the award was affirmed on review, the employer and carrier brought the matter to this court by special action.

On review, the petitioners contend that the medical opinion of Jaime Vargas, M.D., upon which the employee based his petition to reopen, is insufficient because the report is silent regarding whether the physician considered two intervening industrial incidents in reaching his conclusion that the employee's present condition stems from the November 29, 1973 industrial accident. In response, the employee argues that, having failed to subpoena Dr. Vargas to the hearing, the employer is bound by the physician's written report and cannot collaterally attack its foundation.

The facts surrounding these contentions are that the employee was discharged from his 1973 claim on March 7, 1975, by his treating physician, Dr. Irwin Steinberg. At that time, Dr. Steinberg's report indicated:

". . . He has been working for the past year without any loss of time from working . . .. He still has some complaints referrable to his lower back. In addition to some complaint of some localized loss of sensation to the skin of the postural lateral aspect of the upper portion of the left calf for a distance of approximately 10 cm . . . .."

In March, 1976, Mr. Sharp tripped over a clutch pedal of a fork lift, scraping his nose. This incident was the subject of a "no time loss" claim. Mr. Sharp testified he did not have any pain in his back as a result of this incident.

On November 18, 1976, Mr. Sharp developed back pain while moving some missile warheads. He saw Dr. Jaime Vargas, a neurologist, on November 29, 1976. Dr. Vargas' report indicates that Mr. Sharp suffered flareups of pain four or five times a year and that for "the past two months he has been having practically constant pain." Dr. Vargas' physical examination disclosed: "The most striking finding was marked atrophy of the left gluteus maximus and a 1¼ inch atrophy of the left calf." Dr. Vargas' report went on to state:

"I want to make clear that there is no doubt in my mind that his present problems and the treatment he has received at the hospital including the myelogram are all related to the injury of November 29, 1973."

Dr. Vargas' report did not mention the tripping incident of March, 1976, nor the warhead incident of November 18, 1976. This report was attached to Mr. Sharp's petition to reopen his 1973 injury claim.

Following Mr. Sharp's request for hearing, petitioners had him examined by Dr. Steinberg on June 8, 1977. Dr. Steinberg's testimony at the hearing indicates:

"In terms of physical findings, when I seen [sic] him last for the injury of November 28, '73, he had no atrophy of the

left lower extremity, but when I saw him again on 6/8/77 he did."

Dr. Vargas was not subpoenaed by either party for the hearing, and the only live medical testimony was supplied by Dr. Steinberg who opined that the November, 1976 industrial accident either caused or aggravated Mr. Sharp's present problems. He was further of the opinion, but less certain, that the March, 1976 fall could cause an aggravation of Mr. Sharp's back problems.

■ As previously indicated, petitioners' main contention on appeal is that Dr. Vargas' report is lacking in foundation and thus, is unable to form a basis for the hearing officer's award, because of the failure of that report to consider the two intervening industrial incidents. In support of this proposition, petitioner cites *Russell v. Industrial Commission,* 98 Ariz. 138, 402 P.2d 561 (1965) and *Eagle Indemnity Co. v. Hadley,* 70 Ariz. 179, 218 P.2d 488 (1950). We do not believe these cases are controlling. In *Russell,* the medical evidence establishing no causal connection between the deceased employee's heart attack and his employment had been given by doctors who had not been informed of two work related accidents occurring prior to the employee's hospitalization. On direct examination, these doctors were unable to relate the heart attack to the employment. However, on cross-examination, when given added facts concerning the work being performed by the employee and the accidents, which included a severe blow to the chest on the day prior to his hospitalization, the doctors stated that the work could have precipitated the infarction. The court concluded that such testimony would not support a finding of no causal relationship.

In *Eagle Indemnity Co.,* the doctor's reports were based upon the faulty assumption that the claimant had not suffered a head injury. The Arizona Supreme Court stated that the Commission could properly disregard such opinions as not supported by actual facts. This matter is controlled by Rule 55, Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona, which provides in part:

"Rule 55. Medical Reports and Non-Medical Reports; Right to Cross-Examine

*   *   *   *   *   *

"(d) If timely request for subpoena is not made pursuant to this rule and the provisions of Rule 41, the right to cross-examine the author of any such medical report, document, report, instrument or other written matter, shall be deemed waived *and the documents may be considered to be in evidence."* (emphasis added)

Petitioners' argument that this rule does not preclude them from raising issues as to foundational admissibility is in error. Petitioners failed to subpoena Dr. Vargas. The result of this failure is clear under Rule 55—the petitioners waived their rights to cross-examine and the report is deemed admitted into evidence. At this point, it should be noted that we find nothing fundamentally wrong with such a rule. There is no contention that petitioners were unaware of Dr. Vargas' report and its conclusion finding a new and previously undiscovered condition causally related to the 1973 injury. Moreover, it is pure speculation whether Dr. Vargas knew of these incidents and disregarded them or, if he was unaware of them, whether their presence would have changed his opinion as to causation. If petitioners wished to attack the admissibility of Dr. Vargas' conclusions as lacking in foundation, it was incumbent upon them to subpoena him. The rule simply prohibits doing indirectly that which could have been done directly.

While Rule 55 makes the report admissible in evidence, it does not prohibit petitioners' arguing the weight it should be given by the hearing officer—the failure to mention the two intervening industrial incidents obviously going to the persuasiveness of the report.

■ However, under the facts present here, we cannot say that Dr. Vargas' report should have been disregarded by the hearing officer. Apparently, Dr. Steinberg

placed importance on the incident of November 18, 1976. However, Dr. Vargas on his examination on November 29, 1976 found "marked atrophy of the gluteus maximus and a 1¼ inch atrophy of the left calf." The hearing officer could rightly consider whether such atrophy found by Dr. Vargas could have developed in the 11-day period between November 18 and November 29.

As to the March, 1976 incident it appears to have been minor in consequences; in fact, Dr. Steinberg was only willing to say that this incident "could" have been a factor.

Based upon these considerations, we hold that the award of the hearing officer allowing reopening was supported by the evidence, and therefore affirm.

EUBANK, P. J., and OGG, J., concur.