604 P.2d 621

**Wendell A. SNEED, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Redburn General Tire Company, Respondent Employer,**

**United States Fidelity and Guaranty Company, Respondent Carrier.**

**No. 14425–PR.**

Supreme Court of Arizona, In Banc.

Dec. 12, 1979.

Rehearing Denied Jan. 8, 1980.

---

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Indus. Commission, Phoenix, for respondent.

Everett, Bury & Moeller by J. Michael Moeller, Marshall Humphrey, III, Tucson, for respondents employer and carrier.

STRUCKMEYER, Vice Chief Justice.

Wendell A. Sneed petitioned this Court to review a memorandum decision of the Court of Appeals, *Sneed v. Industrial Commission of Arizona* (1 CA–IC 2014, filed May 15, 1979). Jurisdiction was accepted pursuant to A.R.S. § 12–120.24. Decision of the Court of Appeals vacated, and the award of the Industrial Commission set aside.

Petitioner suffered an injury to his back on March 6, 1973 while working in the service department of the Redburn Tire Company. A claim for benefits was accepted by the insurance carrier, and benefits were paid through October 4, 1974. The carrier, United States Fidelity and Guaranty Company, issued a Notice of Claim Status, finding petitioner had sustained a permanent disability, but terminating medical treatments. Nearly three years later, petitioner requested a reopening of his claim based upon new, additional or previously undiscovered conditions related to the accident of March 6, 1973. After two hearings, held in January and March, 1978, the Petition to Reopen was denied. The issue presented for review is whether the record supports a finding that petitioner failed to

show a new, additional or previously undiscovered condition as required by the Arizona Workmen's Compensation Act.

■ The Act reads, in part:

"An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition * * *." A.R.S. § 23–1061 H.

A claimant seeking to reopen has the burden of showing by a preponderance of the evidence the presence of a new, additional or previously undiscovered temporary or permanent condition and a causal relationship between the new disability and the prior industrial injury. *Siqueiros v. Industrial Commission,* 20 Ariz.App. 104, 510 P.2d 415 (1973); *London v. Industrial Commission,* 71 Ariz. 111, 223 P.2d 929 (1950).

■ The hearing officer in denying the Petition to Reopen made the following finding:

"5. The applicant has not carried his burden of proof *that he is in need of active treatment* for a new, additional or previously undiscovered disability or condition as a result of the industrial injury. Therefore, the PETITION TO REOPEN should be denied." (Emphasis added.)

This finding is not compatible with the statutory requirements of A.R.S. § 23–1061 H, quoted supra. Petitioner need not show he is in need of active treatment in order to reopen his claim. He need only show the existence of a new, additional or previously undiscovered condition. The medical benefits available or the appropriate treatment for the new, additional or previously undiscovered condition, as well as any adjustment or modification in the amount of compensation payable, or degree of disability established, can be appraised after the claim has been reopened.

This Court, in *Harris v. Industrial Commission,* 75 Ariz. 71, 251 P.2d 890 (1952), citing *Nevitt v. Industrial Commission,* 70 Ariz. 172, 217 P.2d 1039 (1950), required that a claimant show a *change* in his physical condition in order to have his case reconsidered. Other language which has been used to describe whether the condition is "new, additional or previously undiscovered" as required by the statute includes: "[P]etitioner's present condition has *worsened* since the original award * * *", *Lockhart v. Industrial Commission,* 15 Ariz. App. 209, 487 P.2d 430 (1971) (emphasis added), and "[t]he *aggravation* of a preexisting industrially related injury merits a reopening * * *", *Culver v. Industrial Commission,* 23 Ariz.App. 540, 534 P.2d 754 (1975) (emphasis added). See also 3A Larson, The Law of Workmen's Compensation § 81.31. The Arizona cases also require a showing of a comparative change in petitioner's condition since the entry of the original award. *Aetna Insurance Co. v. Industrial Commission,* 115 Ariz. 110, 563 P.2d 909 (App.1977).

An appraisal of the evidence upon which petitioner seeks a reopening shows that the closing of his claim in 1974 was predicated to a large extent on the report of Lawrence M. Haas, M.D. This report reads:

"*PHYSICAL EXAMINATION*: Examination reveals an alert male in no acute distress. His gait is within normal limits. Sensation, motor function, circulation and reflexes are normal in the lower extremities. Leg lengths are equal. Thigh diameters are equal. Calf diameters are slightly asymmetrical with 1 cm. [0.39 inch] of calf atrophy on the left side. Muscle function is excellent in the lower extremities * * * Range of motion of the hips, knees, ankles, and feet are within normal limits. Straight leg raising is entirely normal.

\* \* \* \* \* \*

*RECOMMENDATION*: I feel the patient may have some mild degenerative joint disease in the lumbosacral spine * * * No further treatment is indicated for the condition. I feel the patient is stable and that he can be released to return to work as far as his back is concerned."

Dr. Robert W. Weber, an orthopedic surgeon licensed to practice in the State of Arizona, was petitioner's attending physician from the date of the initial injury until March 14, 1975. At respondent's request, petitioner was re-examined by Dr. Weber in January of 1978. Dr. Weber's report, as well as his testimony given at the hearing, provided comparative evidence of petitioner's condition. An examination of the Weber report of January 1978, when compared with the Haas report of October 1974, makes it apparent that the petitioner's condition had changed, become aggravated, or had worsened since the 1974 award.

Dr. Haas reported "[s]ensation * * * [is] normal in the lower extremities", but Dr. Weber in 1978 noted that petitioner suffered "hypalgesia [diminished sensitivity to pain] along the lateral aspect of the left thigh, to some extent in the left leg and along the lateral aspect of the foot." Similarly, Dr. Haas indicated both thighs were equal in diameter and one centimeter (0.39 inch) of atrophy in the left calf, but Dr. Weber noted a significant increase in the atrophy of the left calf and new, previously non-existing atrophy in the left thigh:

"The calf measured 13¼″ on the right, 12½″ on the left. The thigh measured 17¾″ on the right and 17″ on the left."

█ Dr. Haas measured 0.39 inch atrophy in the left calf in 1974, while Dr. Weber's measurement showed 0.75 inch, indicating an increase of almost 100%. Likewise, the atrophy in the thigh, which was not present in October 1974, was present and measured 0.75 inch in January 1978. The new atrophy in the thigh, and the significant, additional atrophy in the calf provide sufficient comparative evidence of an objective change in the petitioner's physical condition since the original award of October 1974 to satisfy A.R.S. § 23–1061 H. See *Hughes Aircraft Co. v. Industrial Commission of Arizona*, 120 Ariz. 335, 585 P.2d 1247 (App. 1978).

In comparing the two medical reports, a third instance of changed physical condition is evident. In 1974, Dr. Haas performed a straight leg raising test. He noted in his report that such activity was "entirely normal." By January 1978, the petitioner's "[s]traight leg raising was carried to about 70 degrees on the left side with sharp pain into the leg." Although the record does not indicate what the normal range of such activity would be, Dr. Weber indicated he had, prior to 1975, performed the same test on petitioner and obtained a high reading of 85 degrees, thereby providing comparative evidence of a 15-degree difference in limitation of the leg. It is uncertain whether Dr. Weber's earlier measurements were made subsequent to the last award; however, when taken together with Dr. Haas' finding of no limitation at the time of closing, it is sufficient to show that a change had occurred since October 1974.

Respondents argue that the above-noted changes do not compel reopening if they are the result of a "continuation" of petitioner's condition. As to this, Dr. Weber, on March 8, 1978, testified:

"Q. Doctor, do you have an opinion, based on a reasonable medical probability, on whether or not he has any new or previously undiscovered disability or condition relative to his injury of March 6, 1973, at the time that you examined him in January of 1978?

\* \* \* \* \* \*

A. I think he has a continuation of the same problem that he had then."

The argument that a continuation of the problem is synonymous with no change— that petitioner's condition is merely a "continuation" of the prior injury based upon the testimony quoted supra, is nothing more than an attempt to impose legal significance upon a lay term used as such by the expert witness. It is clear from Dr. Weber's testimony that the various changes are new or additional and are not a mere continuation of the same condition. In response to questioning, he compared the January 1978 findings to those he had made to March 1975. Selected portions of the testimony indicate a "changed" and not a "continuing" physical condition:

"I had the measureable differences in the legs.

* * * He had the numbness along the lateral aspect of the left thigh, leg and foot.

He had a little difference in straight leg raising * * *.

* * * * * *

Q. * * * what was the greatest limitation on left leg raising that your record reflects?

A. I think I reported 85 degrees or—well, I'll say there was one time I think I had it at 85 degrees, which isn't very much limitation.

* * * * * *

Q. Now, is 70 degrees a greater limitation or a lesser limitation?

A. Greater.

* * * * * *

Q. Had the hypalgesia along the lateral aspect of the left thigh and to some extent the left leg and along the lateral aspect of the foot been present at any time before March of 1975?

A. I don't believe so.

* * * * * *

Q. Do you have any records of what his limitation was on bending in March '75?

A. It wasn't limited then."

Upon examination by the hearing officer, the doctor answered this question:

"Q. Dr. Weber, is this difference in one centimeter in the measurement of the calf, and three-quarters of an inch, I believe, in the measurement between one leg thigh and the other, is that a significant variation?

A. I think so."

Since the testimony clearly establishes that changes have taken place in petitioner's condition since the closing of the prior award, the proper interpretation of Dr. Weber's use of the word "continuation" in light of the entire record is that the changes currently experienced by petitioner are a result of and are causally related to the prior industrial injury. Such an interpretation is further bolstered by the doctor's testimony. He said:

"Q. In regards further to one who has a back condition such as Mr. Sneed, and the possibilities of him having further problems through either minor activities or major activities, I assume that a person who's never had back problems can have a herniated disc from bending over to pick up a piece of paper or something. Is that possible?

A. Well, it's—I guess it's possible. I think most of the time the herniated discs are a result of some precursors that have been going on.

Q. By precursors, what do you mean?

A. Seldom do they appear out of the clear blue sky.

People have problems with their back before you actually herniate one."

▋ The law of Arizona is uncontrovertibly established that a showing of a change in physical condition, *Harris v. Industrial Commission,* supra, an aggravation of a pre-existing condition, *Culver v. Industrial Commission,* supra, and *Lockhart,* supra, and/or a worsening of a prior condition, *Lockhart,* supra, are sufficient to show a new, additional or previously undiscovered condition. Each of the terms requires that the original injury continue in existence. There can be no aggravation of a condition without the continuation of the condition; there can be no worsening of the condition without the condition continuing to exist; and there can be no change in the condition unless the original condition exists to be changed.

▋ If conditions develop which are causally related to the initial injury but which were not present at the time of the last prior award, and were not considered in making the award, a petition to reopen based upon such new or additional conditions is appropriate and should be granted. There is no indication in the present case that any of the conditions upon which petitioner bases his petition to reopen (new atrophy in thigh, new limitation on straight leg raises, new loss of sensitivity along the left leg, and the additional atrophy) were present, expected, contemplated or con-

sidered at the time of the last prior award. Such conditions are, therefore, new and additional within the purview of A.R.S. § 23–1061 H.

The Commission's denial of the Petition to Reopen was improper and is set aside.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.