859 P.2d 796

Arthur HOPKINS, Petitioner Employee,

v.

INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Salt River Project, Respondent Employer,

Sedgwick James—CMS, Respondent Insurance Carrier.

No. 1 CA–IC 92–0179.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 23, 1993.

Ely, Bettini, Ulman, Insana & Turley by Trace A. Bartlett, Ellen Hendrickson, Phoenix, for petitioner Employee.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by Ronald H. Moore, John J. Egbert, Phoenix, for respondents Employer and Carrier.

## OPINION

CLABORNE, Presiding Judge.

This is a special action review of an Arizona Industrial Commission award denying a petition to reopen. The sole issue presented on appeal is whether the administrative law judge ("the ALJ") erred by finding that the petitioner employee ("Claimant") failed to establish a change in condition sufficient to support a petition to reopen. Because the uncontradicted evidence established a legally sufficient change in condition, we set aside the award.

On December 30, 1986, Claimant was employed as an Equipment Operator II by the respondent employer, Salt River Project ("SRP"), when he sustained a left-knee injury. He filed a workers' compensation claim, which was accepted for benefits. On May 10, 1988, this claim was closed with a scheduled forty percent permanent impairment of the left lower extremity, but Claimant was able to return to his regular work.

On March 11, 1991, Claimant filed both a petition for rearrangement and a petition to reopen his workers' compensation claim. SRP denied both petitions, and Claimant timely requested hearings. Before the first hearing, Claimant withdrew his petition for rearrangement. Three hearings were held for testimony from Claimant, his treating orthopedic surgeon, his podiatrist, and an independent medical examiner.

Claimant testified that as an Equipment Operator II, he assisted journeyman linemen installing power poles and stringing electrical wire. He stated that this job involved climbing and repetitive use of foot pedals on various types of heavy equipment. He was injured when he struck a gas line while operating an auger. After his industrial injury, Claimant underwent reconstructive knee surgery, and he returned to his regular work in April 1988.

Claimant testified that he performed his regular work for approximately one year before his condition deteriorated and became too painful to operate heavy equipment. He then became a groundman so he did not have to operate machinery. His condition continued to deteriorate, and in February 1991, Claimant left work and began receiving long-term disability benefits.

Claimant stated that he cannot straighten or bend his left leg or squat and that he is in a lot of pain. He testified that his pain has worsened substantially since the April 1988 closure. His current job limitations are for sedentary work performed mostly while seated. Claimant continues to see a doctor approximately two times per year for his left knee.

Dr. Chandler, a board-certified orthopedic surgeon specializing in knee surgery and arthroscopy, first saw Claimant in January 1987 for his industrial injury. He testified that Claimant sustained a severe left-knee injury, which required surgery on January 7, 1987, to remove bone fragments and to perform a partial meniscectomy and a chondroplasty. Dr. Chandler stated that Claimant was stationary on April 25, 1988, with a forty percent permanent impairment of the left lower extremity. He released Claimant to his regular work with the recommendation that he limit squatting. The doctor continued to see Claimant every three to six months.

Dr. Chandler testified that by August 20, 1990, Claimant was no longer capable of performing the duties of an equipment operator or a groundman because of his deteriorating left knee condition. Claimant was limited to walking one mile total per day, and he could not run, squat, kneel, crawl, climb, carry more than ten pounds, nor lift more than twenty to fifty pounds. Further, Claimant needed to change positions every twenty to thirty minutes. Dr. Chandler stated that Claimant could perform sedentary work within these limitations.

Dr. Chandler testified that because of Claimant's industrial injury, he has developed degenerative arthritis in his left knee, which is worsening. He stated that Claimant's knee condition has deteriorated since the May 1988 closure, and he anticipates that it will continue to do so and will eventually require active treatment. At the hearing, it was the doctor's opinion that Claimant continued to be stationary with the same permanent impairment rating and required the same supportive care, two to four times per year.

Robert D. Mills, M.D., a board-certified orthopedic surgeon, testified regarding his independent medical examination of Claimant on April 15, 1991. He received a history of the December 1986 industrial injury and reviewed medical records from Claimant's subsequent treatment and surgery. He observed that Claimant returned to his regular work from February 1988 until September 1990. Dr. Mills stated that Claimant complained of increasing pain and swelling in his left knee which required eight to twelve aspirin per day. He conducted an orthopedic examination and found thigh atrophy on the left, limited flexion, normal extension, and no evidence of knee instability. He testified that these findings were consistent with early traumatic degenerative arthritis, but he anticipated that it would take between five and twenty years before Claimant required additional knee surgery.

Based on his examination and record review, Dr. Mills testified that Claimant remained stationary and did not require active medical care. It was his opinion that Claimant had a thirty-five percent permanent impairment of the left lower extremity, based on the AMA Guides, and that Claimant required supportive care four times per year. Dr. Mills testified that his

April 1991 physical limitations for Claimant included light duty work, and no climbing, squatting, or prolonged standing or walking. He agreed that these limitations were similar to Dr. Chandler's August 1990 limitations except for frequent changes in position and the ten pound lifting limitation. Further, Dr. Mills agreed that the equipment operator position was not suitable for Claimant.

On July 23, 1992, the ALJ entered an award denying Claimant's petition to reopen. He found a medical conflict existed between Dr. Chandler's and Dr. Mills' testimony, which he resolved in favor of Dr. Mills. The award was summarily affirmed on administrative review, and Claimant brought this special action.

■ A claimant seeking to reopen his claim has the burden of showing a new, additional, or previously undiscovered temporary or permanent condition causally related to the industrial injury. *Stainless Specialty Mfg. Co. v. Industrial Comm'n*, 144 Ariz. 12, 16, 695 P.2d 261, 265 (1985) (interpreting Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–1061(H) (Supp.1992)). The Arizona Supreme Court originally interpreted a changed condition sufficient to support a reopening to mean a changed physical condition alone. *See, e.g., Bill Breck Dodge v. Industrial Comm'n*, 138 Ariz. 388, 391, 675 P.2d 275, 278 (1983). In *Stainless Specialty*, the Arizona Supreme Court expanded its interpretation of a changed condition:

> [F]rom the standpoint of statutory construction, A.R.S. § 23–1061(H) permits reopening for a new, additional or previously undiscovered "condition." It does not exclude changes in "medical condition" nor require that the change be in a "physical condition." Thus, as used in the statute, "condition" could be interpreted to mean any attendant circumstance. This would alter the interpretative emphasis from changes in physical condition to the true question in all *res judicata* problems in compensation cases, *viz:* was the issue raised one which either was litigated or could have been litigated prior to closing?

144 Ariz. at 17–18, 695 P.2d at 266–67 (citation omitted). Applying this interpretation, the court concluded that newly available medical treatment for the industrially-related injury satisfies the statute.

The real argument is that Claimant claims that his inability to continue to perform his date of injury employment is a changed condition sufficient to support a reopening. He also claims that he is entitled to additional disability benefits pursuant to either A.R.S. section 23–1044(B)(21) (Supp.1992) or *Dutra v. Industrial Comm'n*, 135 Ariz. 59, 659 P.2d 18 (1983).

Before *Dutra*, the percentage of physical functional impairment determined the rating for a scheduled impairment. *See Perez v. Industrial Comm'n*, 141 Ariz. 89, 90, 685 P.2d 154, 155 (App.1984). Actual disability to perform date of injury work was immaterial. *Id.* In *Dutra*, the Arizona Supreme Court held that Claimant's ability to perform the particular job held at the time of the industrial injury could be considered in determining the percentage of scheduled disability. *See Dutra* 135 Ariz. at 61, 659 P.2d at 20 (1983).

In response to *Dutra*, the legislature amended A.R.S. section 23–1044(B)(21) to define "loss of use":

> In this paragraph, "loss of use" means a loss of physical function of the affected member, sight or hearing. The effect on a worker's ability to return to his occupation at the time of the injury shall not be considered in establishing the percentage of loss under this section, except that *if the employee is unable to return to the work he was performing at the time he was injured due to partial loss of use*, compensation pursuant to this section shall be calculated based on seventy-five per cent of the average monthly wage.

Laws 1987, 3rd S.S., ch. 2, § 7 (emphasis added).

■ We disagree that the amended statute applies to the current case. Statutes in effect on the date of injury govern a claimant's substantive rights. *See, e.g., Alvarado v. Industrial Comm'n*, 148 Ariz. 561, 563, 716 P.2d 18, 20 (1986); *Howard P.*

*Foley Co. v. Industrial Comm'n,* 151 Ariz. 522, 523, 729 P.2d 326, 327 (App.1986). Because A.R.S. section 23–1044(B)(21) was amended in 1987 and Claimant's injury occurred in 1986, this statute is not applicable to this case. Claimant nevertheless would be entitled to have the ALJ consider his inability to perform his pre-injury employment under *Dutra* if he established a changed condition sufficient for reopening. *Cf. Perez,* 141 Ariz. at 91, 685 P.2d at 156 (can not reopen just to apply *Dutra* if a claimant disabled from date of injury work when claim closed).

SRP argues that Claimant failed to establish a changed physical condition or changed medical procedures sufficient to reopen. In this case, uncontradicted medical evidence established that Claimant sustained a severe left-knee injury for which he underwent surgery and then returned to his regular work. Approximately a year later, Claimant's physical condition had deteriorated such that he was no longer able to perform the work of an equipment operator. Although his knee condition remained stationary and his permanent impairment rating the same, Claimant was limited to sedentary work with minimal physical requirements as a result of the degeneration of his knee.

■ When expert medical testimony conflicts, it is the ALJ's duty to resolve those conflicts, *Perry v. Industrial Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975), but uncontroverted medical findings are binding on the Industrial Commission. *Cammeron v. Industrial Comm'n,* 98 Ariz. 366, 371, 405 P.2d 802, 805 (1965). In this case, there does not appear to be any significant conflict between Dr. Chandler's and Dr. Mills' opinions concerning the physical limitations for Claimant. They both agree that his knee condition now disables him from performing the work of an equipment operator. This is a change in condition from the time of the initial scheduled disability award. For that reason, the evidence is sufficient for reopening and the award must be set aside.

■ To reopen, a claimant need only prove the existence of a new, additional, or previously undiscovered condition, not that the condition requires active medical treatment. *Sneed v. Industrial Comm'n,* 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979).

> The medical benefits available or the appropriate treatment for the new, additional or previously undiscovered condition, as well as *any adjustment or modification in the amount of compensation payable,* or degree of disability established, *can be appraised after the claim has been reopened.*

*Id.* (emphasis added).

■ The Arizona Workers' Compensation Act is remedial legislation enacted to protect employees injured in the course of their employment. *Goodyear Aircraft Corp. v. Industrial Comm'n,* 62 Ariz. 398, 402–03, 158 P.2d 511, 513 (1945). Workers' compensation statutes are to be liberally construed to effectuate that purpose. *Flamingo Motor Inn v. Industrial Comm'n,* 133 Ariz. 200, 201, 650 P.2d 502, 503 (App.1982). Where there is doubt as to construction, the construction should be adopted which will best effect the purpose of compensating Claimant for his disability. *Bonnin v. Industrial Comm'n,* 6 Ariz. App. 317, 320, 432 P.2d 283, 286 (1967). In this case, Claimant sustained an additional disability after the initial scheduled disability award and he should be compensated for that loss under *Dutra.*

The award is set aside.

NOYES and GARBARINO, JJ., concur.