110 P.3d 363

### Carol L. NASLUND (Kotzin), Petitioner,

v.

### The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

### Maricopa County, Respondent Employer,

### Maricopa County c/o Tristar, Respondent Carrier.

### No. 1 CA–IC 02–0084.

Court of Appeals of Arizona, Division 1, Department A.

April 21, 2005.

---

Cecil A. Edwards, Jr., Phoenix, Attorney for Petitioner Employee.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Klein, Lundmark, Barberich & LaMont, P.C. By R. Todd Lundmark, Lisa M. La-Mont, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

GEMMILL, Judge.

¶ 1 Arizona Revised Statutes ("A.R.S.") section 23–1044(A) (Supp.2004) was amended in 1999 to require that "fifty per cent of retirement and pension benefits received from the insured or self-insured employer during the period of temporary partial disability" be considered as "wages able to be earned," thereby reducing temporary partial disability compensation benefits owed to the workers' compensation claimant. 1999 Ariz. Sess. Laws, ch. 331, § 6. In 1925, the voters of Arizona enacted Article 18, Section 8, of the Arizona Constitution, which states in pertinent part that "[t]he percentages and amounts of compensation provided in House Bill No. 227 enacted by the Seventh Legislature of the State of Arizona, shall never be reduced ... except by initiated or referred measure as provided by this Constitution." Based upon this constitutional provision, we hold that the 1999 amendment to § 23–1044(A) is unconstitutional because it impermissibly reduces the amount of temporary partial disability compensation without voter approval.

¶ 2 Petitioner-employee Carol Naslund seeks special action review of an Industrial Commission of Arizona ("ICA") award and

decision upon review that denied her temporary partial disability ("TPD") benefits. This court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10. We set aside the award because it was based on the 1999 amendment to A.R.S. § 23–1044(A) that we find unconstitutional.

## I.

¶ 3 While employed as a detention officer by the Maricopa County Sheriff's Office ("MCSO") in 1994, Naslund sustained a neck injury from an assault by an inmate. She filed a claim for workers' compensation benefits that MCSO and its carrier accepted. Naslund received medical and surgical treatment and returned to work as a detention officer for MCSO, but she was forced to retire in 1997 from her position because of the risk of re-injuring her neck. Upon retirement, she began receiving a monthly retirement benefit from MCSO.

¶ 4 In addition, she obtained a new full-time position with MCSO as an administrative assistant. She earned a lower salary in this new position but was not exposed to as much risk of re-injury.

¶ 5 While working for MCSO as an administrative assistant in 2000, Naslund successfully petitioned to reopen her 1994 industrial claim. She received additional medical treatment, including surgery, for her neck injury. During a period of recovery following surgery, she was eligible for TPD benefits.[1]

¶ 6 Relying on the 1999 amendment to A.R.S. § 23–1044(A), MCSO and its carrier included fifty per cent of Naslund's monthly retirement income in the calculation of wages that she was able to earn during the period of temporary partial disability. As a result, Naslund's TPD compensation benefit was reduced to zero.

¶ 7 On appeal Naslund challenges the ICA award that upheld the application of the fifty

per cent retirement income setoff. If the 1999 amendment does not apply or is unconstitutional, she is entitled to compensation benefits for the period of her temporary partial disability.

## II.

¶ 8 Before reaching the constitutionality of the 1999 amendment to A.R.S. § 23–1044(A), we first consider Naslund's statutory arguments that the amendment should not have been applied to reduce her benefits. See Goodman v. Samaritan Health Sys., 195 Ariz. 502, 505, ¶ 11, 990 P.2d 1061, 1064 (App.1999) ("It is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case."). We apply a de novo standard of review to issues of statutory interpretation and application. See O'Connor v. Hyatt, 207 Ariz. 409, 411, ¶ 4, 87 P.3d 97, 99 (App.2004); Anderson v. Indus. Comm'n, 205 Ariz. 411, 412, ¶ 2, 72 P.3d 341, 342 (App.2003).

¶ 9 Naslund first argues that the 1999 amendment of A.R.S. § 23–1044(A) was erroneously applied retroactively to reduce her TPD benefits from her 1994 injury. In 1994, § 23–1044(A) stated:

> For temporary partial disability there shall be paid during the period thereof sixty-six and two-thirds per cent of the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter. Unemployment benefits received during the period of temporary partial disability shall be considered wages able to be earned.

A.R.S. 23–1044(A) (Supp.1994). The 1999 amendment modified the second sentence of § 23–1044(A) by adding the italicized language:

> Unemployment benefits received during the period of temporary partial disability *and fifty per cent of retirement and pension benefits received from the insured or self-insured employer during the period of*

---

1. A claimant is typically entitled to receive TPD benefits when she is released by her doctor to engage in light duty or part-time work while her active medical treatment continues. See Hardware Mut. Cas. Co. v. Indus. Comm'n, 17 Ariz.

App. 7, 9–10, 494 P.2d 1353, 1355–56 (1972); Arizona Workers' Compensation Handbook, § 7.2.3, at 7–3 to –4 (Ray J. Davis et al. eds, 1992 & Supp.2002).

*temporary partial disability* shall be considered wages able to be earned.

1999 Ariz. Sess. Laws, ch. 331, § 6 (emphasis added).

■ ¶ 10 Absent an express statement of retroactive intent, new statutory enactments have only prospective application. *See* A.R.S. § 1–244 (2002); *Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470, ¶ 10, 11 P.3d 1006, 1009 (2000). Because Naslund was injured in 1994 and the language regarding "fifty per cent of retirement and pension benefits" was added in 1999, she contends that the amendment cannot be applied retroactively and that she is entitled to TPD benefits based on the statute in effect on the date of her injury. MCSO responds that the 1999 amendment is not being applied retroactively to Naslund because she did not have a vested right to TPD benefits on her date of injury. Rather, she only became entitled to receive those benefits when her claim was reopened in 2000, after § 23–1044(A) had been amended.

■ ¶ 11 If Naslund's right to TPD benefits arising from her 1994 injury was vested prior to the 1999 amendment to § 23–1044(A), then the 1999 amendment cannot be applied to reduce her benefits. As our supreme court has explained, "legislation may not disturb vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205, ¶ 15, 972 P.2d 179, 189 (1999). "The critical inquiry in retroactivity analysis is not whether a statute affects a substantive right but whether a statute affects a *vested* right. Thus the implicit meaning of the statement 'substantive rights may not be retroactively impaired' is 'substantive rights may not be impaired *once vested.*' " *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130, 139–40, 717 P.2d 434, 443–44 (1986).

■ ¶ 12 Naslund did not have a vested right to the TPD benefits at issue prior to the 1999 amendment. "A property right 'vests' *when every event has occurred* which needs to occur to make the implementation of the right a certainty." *Aranda*, 198 Ariz. at 471, ¶ 18, 11 P.3d at 1010 (emphasis added); *see also Hall*, 149 Ariz. at 140, 717 P.2d at 444 (explaining that a vested property right is "actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust").

¶ 13 Naslund became eligible for TPD benefits after her claim was reopened in 2000 for additional medical and surgical treatment. Her right to these benefits was not vested until the happening of certain events that occurred after the 1999 amendment, including the reopening of her claim in 2000 and the determination that she qualified for TPD benefits. We conclude, therefore, that the 1999 amendment has not been applied retroactively to deprive Naslund of a vested property right.

¶ 14 Naslund further argues, however, that this court's analysis and statements in *Hopkins v. Industrial Commission*, 176 Ariz. 173, 859 P.2d 796 (App.1993) preclude application of the 1999 amendment to reduce her benefits from the 1994 injury. In *Hopkins*, the claimant received an award of scheduled permanent partial disability benefits for a 1986 knee injury and continued working. *Id.* at 174–75, 859 P.2d at 797–98. By 1991, his knee injury had deteriorated and he could no longer work. *Id.* He petitioned in 1991 to reopen his claim to seek additional disability benefits pursuant to either *Dutra v. Industrial Commission*, 135 Ariz. 59, 659 P.2d 18 (1983) [2] or a 1987 amendment to A.R.S. § 23–1044(B)(21) (Supp.1992) that increased benefits for an employee unable to return to his pre-injury work. *Id.* at 176, 859 P.2d at 799. The ICA denied the petition to reopen. This court set aside the award, finding that the claimant had established that he was entitled to reopen to have the ICA consider his inabil-

---

**2.** In *Dutra*, the supreme court held that, "as to scheduled injuries, compensation is based upon the job the claimant was performing at the time of the injury" and "[i]nability to perform the claimant's particular job at the time of his injury must be considered in determining the extent of the workman's disability." 135 Ariz. at 61, 659 P.2d at 20. "Before *Dutra*, the percentage of physical functional impairment determined the rating for a scheduled impairment." *Hopkins*, 176 Ariz. at 176, 859 P.2d at 799.

ity to perform his pre-injury employment under *Dutra.* *Id.* at 177, 859 P.2d at 800.

¶ 15 The *Hopkins* court decided, however, that the 1987 statutory amendment was not applicable. The court stated: "Statutes in effect on the date of injury govern a claimant's substantive rights. Because A.R.S. section 23–1044(B)(21) was amended in 1987 and Claimant's injury occurred in 1986, this statute is not applicable to this case." *Id.* at 176–77, 859 P.2d at 799–800 (citations omitted).

¶ 16 Naslund contends that *Hopkins* supports her position that benefits from her neck injury should be governed by the statutes as they existed at the time of injury. We note, however, that *Hopkins* predates *Aranda* and *San Carlos Apache Tribe* and does not cite *Hall.* Nor does *Hopkins* analyze the vesting of property rights in relation to statutory amendments. In light of our supreme court's analysis of vested rights in *Aranda, San Carlos Apache Tribe,* and *Hall, see supra* ¶¶ 10–13, we do not find *Hopkins* to be persuasive in resolving this dispute.

¶ 17 Naslund next argues that the 1999 amendment of § 23–1044(A) cannot be applied to reduce her TPD benefits because to do so would violate our statutes prohibiting waiver or assignment of workers' compensation benefits. Attempted waivers of compensation are void under A.R.S. § 23–1025(A) (Supp.2004), and assignments of compensation are generally prohibited by A.R.S. § 23–1068(A), (B) (Supp.2004).[3]

¶ 18 We do not agree with Naslund that applying fifty per cent of her retirement income to reduce her TPD benefits results in a prohibited waiver or assignment of her compensation. Sections 23–1025(A) and – 1068 prohibit *an employee* from waiving or assigning her compensation benefits. They do not prevent *the legislature* from enacting provisions that allow a portion of retirement income to reduce TPD benefits.

¶ 19 For these reasons, we conclude that the 1999 amendment of § 23–1044(A) is applicable to reduce or eliminate Naslund's

TPD benefits, unless the amendment is unconstitutional.

## III.

■ ¶ 20 In 1925, the Seventh Legislature of the State of Arizona enacted House Bill No. 227, a new workers' compensation act, to become effective following the approval of a constitutional amendment proposed by the legislature for consideration by Arizona voters. *See* 1925 Ariz. Sess. Laws, ch. 83, § 97; *see also Red Rover Copper Co. v. Indus. Comm'n,* 58 Ariz. 203, 211, 118 P.2d 1102, 1105 (1941) (summarizing the history regarding the 1925 enactments); *Bearden v. Indus. Comm'n,* 14 Ariz.App. 336, 338, 483 P.2d 568, 570 (App.1971) (same). In a special election later that year, Arizona voters approved the proposed amendment, thereby creating Article 18, Section 8 of our State Constitution. *Red Rover,* 58 Ariz. at 211, 118 P.2d at 1105. This section mandates the enactment of a workers' compensation law and, in the final sentence, specifically references House Bill No. 227:

> The percentages and *amounts of compensation* provided in *House Bill No. 227* enacted by the Seventh Legislature of the State of Arizona, *shall never be reduced ... except by initiated or referred measure* as provided by this Constitution.

Ariz. Const. art. 18, § 8 (emphasis added). This final sentence of Article 18, Section 8 carved the "percentages and amounts of compensation" established by House Bill No. 227, in constitutional stone, capable of being reduced or eliminated only by a vote of the people via initiative or referendum. As explained by our supreme court in *Adkins v. Industrial Commission,* 95 Ariz. 239, 244, 389 P.2d 118, 121 (1964):

> Article 18, § 8 is not alone a constitutional directive to the legislature for future action. It is in part a ratification and adoption into the constitution of a specific bill already enacted by the legislature. Accordingly, the legislative act and the

**3.** Although we have cited the current versions of these statutes, we note that § 23–1025(A) was amended in 1999 and § 23–1068 in 2000. *See* 1999 Ariz. Sess. Laws, ch. 160, § 3; 2000 Ariz.

Sess. Laws, ch. 312, § 4. For purposes of this analysis, the earlier versions of these statutes were substantively the same as the current versions.

constitutional measure must be construed together. *Red Rover Copper Co. v. Industrial Commission, supra.* By the constitutional prohibition against a reduction in the percentages and amounts of compensation set forth in House Bill No. 227, the percentages and amounts have become those to which claimants are entitled and will continue to be entitled until reduced by initiative or referendum.

¶ 21 Naslund argues that the 1999 amendment to § 23–1044(A) violates Article 18, Section 8 of the Arizona Constitution because it reduces, without voter approval, the amount of TPD compensation benefits that she would have received under the language of House Bill No. 227.[4] To evaluate this argument, we must compare the TPD benefit language from the 1925 statute to the language of § 23–1044(A) as amended in 1999.

¶ 22 House Bill No. 227 provided the following TPD benefit:

> For temporary partial disability, sixty-five (65) per cent of the *difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter,* for a period not to exceed sixty (60) months during the period of said disability.

1925 Ariz. Sess. Laws, ch. 83, § 70(C)(1) (emphasis added). Our current statute includes the same 1925 language that requires determination of the "difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter." *See* A.R.S. § 23–1044(A). The 1999 amendment, however, added language requiring that "fifty per cent of retirement and pension benefits received from the insured or self-insured employer during the period of temporary partial disability" be considered as "wages able to be earned" after the injury. A.R.S. § 23–1044(A).[5]

¶ 23 Under the language of House Bill No. 227, enacted in 1925 and referenced in our Constitution, Naslund would be entitled to receive TPD benefits. But under the 1999 amendment to § 23–1044(A), her TPD benefits are eliminated as a result of adding fifty per cent of her retirement benefits to what she was able to earn during that period. Because the 1999 amendment reduces the amount of compensation to which Naslund would otherwise be entitled and because it was not approved by Arizona voters, the amendment violates Article 18, Section 8 of our Constitution. *See Adkins,* 95 Ariz. at 244–46, 389 P.2d at 121–22.

¶ 24 In *Adkins,* our supreme court addressed the constitutionality of a 1953 amendment that made it more difficult for some injured workers to reopen their previously-closed claims. Prior to 1953, an injured worker who had been awarded permanent partial disability and who suffered a further decline in earning capacity could reopen to seek additional disability compensation without having to prove a change in physical condition. *Id.* at 244–45, 389 P.2d at 121. Demonstrating a change in earning capacity was sufficient. *Id.* After the 1953 amendment, a loss of earning capacity award was "subject to change only in the event of a subsequent change in the physical condition of the injured employee resulting from the injury and affecting his earning capacity." *Id.* The supreme court held that the amendment requiring a change in physical condition *"reduces the amount of compensation* to which an injured workman might otherwise have been entitled under House Bill No. 227" without having been submitted to the electorate as an initiated or referred measure. *Id.*

---

4. After the parties filed initial briefs in this case, we issued an order notifying the Arizona Attorney General of Naslund's constitutional challenge to A.R.S. § 23–1044(A) and providing the Attorney General an opportunity to address the claim. *See* A.R.S. § 12–1841 (2003) (providing Attorney General should be given opportunity to address constitutional challenges to state statutes). Thereafter, the Attorney General's Office filed a notice indicating that it elected not to file a brief addressing the issue.

5. A 1973 amendment added the following sentence to § 23–1044(A): "Unemployment benefits received during the period of temporary partial disability shall be considered wages able to be earned." 1973 Ariz. Sess. Laws, ch. 133, § 25. The 1999 amendment added language pertaining to retirement and pension benefits to this sentence. *See supra* ¶ 9. The constitutionality of the 1973 amendment has not been addressed by our appellate courts and is not before us in this appeal.

at 245, 389 P.2d at 121 (emphasis added). The court concluded:

> As such it *reduces the amount of compensation* due in all those cases where the claimant's earning capacity rather than his physical condition is the determining factor. Under the plain language of Article 18, § 8, Arizona Constitution, this is precisely what the legislature cannot do. Subsection F of A.R.S. § 23–1044 is unconstitutional and void.

*Id.* at 246, 389 P.2d at 122 (emphasis added).

¶ 25 Applying the foregoing language from *Adkins* to these facts yields the following conclusions. The 1999 amendment to § 23–1044(A) reduces the amount of TPD compensation benefits in every case in which the claimant receives retirement or pension income from the same employer (such as MCSO in this instance). Under the plain language of Article 18, Section 8, this is precisely what the legislature cannot do. The 1999 amendment of A.R.S. § 23–1044(A) is, therefore, unconstitutional and void. *See Adkins,* 95 Ariz. at 244–46, 389 P.2d at 121–22.

¶ 26 MCSO contends, however, that the legislature has the power to amend the workers' compensation act and engage in "coordination of governmental benefits" to avoid duplicate payments and double recoveries. MCSO cites *Parise v. Industrial Commission,* 16 Ariz.App. 177, 492 P.2d 426 (1971), in which this court declined to interpret unemployment benefits as "wages" within the meaning of A.R.S. § 23–1044(A) but nonetheless observed that the workers' compensation act "is always subject to amendment by the legislature." [6] *Id.* at 179, 492 P.2d at 428.

¶ 27 The problem with MCSO's reliance on this dicta from *Parise* is that the *Parise* court did not consider any limitations on legislative authority that result from the final sentence of Article 18, Section 8 of our Constitution. The *Parise* opinion cited neither Article 18, Section 8 nor the *Adkins* opinion. We agree with the general principle expressed in *Parise* that designing, implementing, and amending a workers' compensation

act is a legislative, not a judicial, function. But in this opinion we must evaluate *who* possesses the legislative power to enact amendments that reduce compensation benefits established in House Bill No. 227: the legislature or the voters. Arizona voters in 1925 determined that such "percentages and amounts of compensation" shall not be reduced except through initiative or referendum.

¶ 28 MCSO also contends that the 1999 amendment to § 23–1044(A) does not violate Article 18, Section 8 because Naslund has received the "total compensation" she would have received under House Bill No. 227, although she received part of that "compensation" from MCSO in the form of her retirement benefits. MCSO is arguing, in essence, that the "compensation" guaranteed injured workers in House Bill No. 227 does not need to be paid entirely from the employer or its carrier under the workers' compensation laws. In this approach, a portion of the "compensation" may be paid in the form of retirement or pension benefits. Although MCSO believes that allowing the employer to set off a portion of retirement benefits against TPD benefits is good policy, our decision cannot be made on the basis of policy preferences or attributes.

¶ 29 House Bill No. 227 defines "compensation" as "the compensation and benefits provided for *in this act.*" 1925 Ariz. Sess. Laws, ch. 83, § 46(4) (emphasis added). House Bill No. 227 did not address payments to an injured employee under a retirement or pension plan, and such payments are therefore not "compensation" within the meaning of the workers' compensation act. The constitutional limitation on reducing "compensation" below the amounts set in House Bill No. 227 necessarily means that the *compensation payable under the workers' compensation act* may not be reduced except by a vote of the electorate. *See Adkins,* 95 Ariz. at 244, 389 P.2d at 121 (stating that Article 18, Section 8 and House Bill No. 227 must be construed together); *Red Rover Copper Co.,* 58 Ariz. at 211, 118 P.2d at 1105 (same). For

---

6. In 1973, in apparent reliance on *Parise,* the legislature amended A.R.S. § 23–1044(A) to provide that unemployment benefits shall be considered as wages able to be earned. *See supra* note 5.

these reasons, we reject MCSO's "total compensation" argument.

¶ 30 We have also considered whether the 1999 amendment to § 23–1044(A) might be upheld by interpreting "wages" in House Bill No. 227 to include retirement and pension benefits received from the same employer.[7] If the term "wages" in § 70(C)(1) of House Bill No. 227 (*see supra* ¶ 22) could reasonably be interpreted to include retirement benefits, then the 1999 amendment does not actually reduce compensation benefits below the level set in the 1925 enactment and would not be unconstitutional. Because "wages" is not specifically defined in House Bill No. 227, we must consider how the term was used, the context, and its plain and ordinary meaning. *See SFPP, L.P. v. Arizona Dept. of Revenue,* 210 Ariz. 151, 155, ¶ 19, 108 P.3d 930, 934 (App.2005) ("When a term is undefined by the legislature, we strive to apply the plain and ordinary meaning of the words used unless a contrary intent is expressed by the legislature."); *see also Trustmark Ins. Co. v. Bank One, Arizona, NA,* 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App.2002) (stating that "in applying a statute, courts give words their ordinary meaning, unless a specific definition is given or the context clearly indicates that a special meaning was intended").

¶ 31 The TPD benefit specified in House Bill No. 227 requires a calculation of the "difference between the *wages earned* before the injury and the *wages which the injured person is able to earn thereafter.*" 1925 Ariz. Sess. Laws, ch. 83, § 70(C)(1) (emphasis added). There is nothing in this usage of "wages" to suggest that the legislature intended anything other than the plain and ordinary meaning of the term. The term "wages" has been consistently defined over many years as compensation paid for work performed. *See* Webster's Revised Unabridged Dictionary 1622 (1913), http://machaut .uchicago.edu/ cgi-bin/WEBSTER .sh?WORD=wages ("compensation given to a hired person for services; price

paid for labor; recompense; hire"); Webster's New International Dictionary of the English Language 2863 (2nd ed.1935) ("[p]ay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees"); Webster's New World Dictionary 1499–1500 (3rd college ed.1988) ("money paid to an employee for work done, and usually figured on an hourly, daily, or piecework basis").

¶ 32 This ordinary meaning of "wages" is also supported by the context of the sentence, because of the comparison of wages "earned" before the injury to wages that the injured person is "able to earn thereafter." For these reasons, we agree with the statement in *Parise* that the meaning of "wages" in this context "is the value received for the duties and labors which a workman performs, i.e., the value received for services actually rendered." *Parise,* 16 Ariz.App. at 179, 492 P.2d at 428. The *Parise* court held that unemployment benefits are not "wages" in the ordinary sense but are a wage substitute. *Id.*

¶ 33 While retirement and pension benefits are similar to wages because they may have been earned for *past* services, such benefits are not paid for *present* services. We conclude, therefore, that retirement and pension benefits are not "wages" that the injured worker is able to earn after the injury, even when the retirement or pension benefits are received from the same employer. *See id.; see also County of Maricopa v. Indus. Comm'n,* 145 Ariz. 14, 19–20, 699 P.2d 389, 394–95 (App.1985) (holding that sick leave benefits were not "wages" within the meaning of § 23–1044(A)).

¶ 34 Accordingly, we are not able to interpret the language of House Bill No. 227 in a way that saves the 1999 amendment to § 23–1044(A) from violating Article 18, Section 8 of our Constitution.

---

7. Although MCSO has not made this precise argument, we choose to consider the argument because we have a "duty to interpret statutes in harmony with the constitution if it is possible to reasonably do so." *Maricopa County v. Kinko's Inc.,* 203 Ariz. 496, 500, ¶ 11, 56 P.3d 70, 74

(App.2002) (citing *Martin v. Reinstein,* 195 Ariz. 293, 301–02, ¶ 16, 987 P.2d 779, 787–88 (App. 1999)). We recognize that "[w]hen considering the constitutionality of a statute, we begin with a strong presumption that legislative enactments are constitutional." *Id.*

## IV.

¶ 35 Our supreme court in *Adkins* evaluated whether the 1953 amendment to A.R.S. § 23–1044 reduced the amount of compensation that some claimants would otherwise receive under the 1925 statutory language. Because the 1953 amendment did just that, the supreme court found it unconstitutional. We have followed *Adkins* in reaching our conclusion that the 1999 amendment to § 23–1044(A) violates Article 18, Section 8 of the Arizona Constitution and is therefore void. Because the award of the ICA that denied temporary partial disability compensation benefits to Naslund was based on application of the 1999 amendment, we set aside the award.

CONCURRING: JAMES B. SULT, Presiding Judge and PHILIP HALL, Judge.

