NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MARY ANN MUNOZ, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

FRY'S FOOD STORES, *Respondent Employer,*

SEDGWICK CMS, *Respondent Carrier.*

No. 1 CA-IC 14-0006
FILED 09-23-2014

---

Special Action - Industrial Commission
ICA Claim No. 20082-960180
Carrier Claim No. 300810823530001
Suzanne Scheiner Marwil, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Weston S. Montrose
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent ICA*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Scott H. Houston
*Counsel for Respondents Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

---

**P O R T L E Y**, Judge:

**¶1**　　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying reopening.  One issue is presented on appeal: whether the medical testimony relied on by the administrative law judge ("ALJ") was equivocal in the absence of a specific credibility finding regarding the petitioner employee's ("claimant's") testimony.  Because we find Dr. Theiler's opinion legally sufficient to support the ALJ's award, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2**　　　　This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in the light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## PROCEDURAL AND FACTUAL HISTORY

**¶3**    Claimant worked for the respondent employer, Fry's Food Stores ("Fry's") as a general merchandise manager.  She was injured on October 15, 2008, while sitting on the floor stocking an end cap.  As a coworker operating a floor cleaning machine passed by claimant, the machine struck the outside of claimant's right leg.  The force of the blow rotated claimant on the floor allowing the machine to also strike her right knee.

**¶4**    Claimant reported the incident to the store manager, who sent her to Concentra Medical Center for treatment.  Claimant filed a workers' compensation claim accompanied by Concentra's treatment record.  Five days later, claimant returned to Concentra for a follow-up appointment and was released to return to her regular work.  The respondent carrier, Sedgwick CMS, accepted claimant's claim as "no time . . . lost,"[2] and closed it with no permanent impairment.  The closure became final without protest.

**¶5**    Four years later, claimant filed a petition to reopen her 2008 claim for treatment of a labral tear in her right hip.  It was denied for benefits, and she timely requested an ICA hearing.  The ALJ held three hearings and heard testimony from claimant, one of her treating doctors, Daniel J. Aschenbrener, D.O., and an independent medical examiner, Anthony C. Theiler, M.D.  The ALJ resolved the medical conflict in favor of Dr. Theiler and entered an award denying the petition to reopen.  Claimant timely requested administrative review, but the ALJ summarily affirmed her award.  Claimant appealed.

## DISCUSSION

**¶6**    The statutory requirements for reopening are found in A.R.S. § 23-1061(H):

> [A]n employee may reopen the employee's claim to secure . . . additional benefits by filing with the commission a petition

---

[2] *See generally* A.R.S. § 23-1061(F), (M) (no compensation payable unless claimant loses more than seven days from work); *Arizona Workers' Compensation Handbook* ("*Handbook*") § 9.4.1.3, at 9-11 (Ray J. Davis, et al., eds., 1992 and Supp. 2013).

> requesting the reopening of the employee's claim upon the basis of a new, additional or previously undiscovered temporary or permanent condition, which petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim. . . . A claim shall not be reopened because of increased subjective pain if the pain is not accompanied by a change in objective physical findings.

It is a claimant's burden to present sufficient evidence to support reopening. *See Hopkins v. Indus. Comm'n*, 176 Ariz. 173, 176, 859 P.2d 796, 799 (App. 1993). When the causal connection between the condition and the prior industrial injury is not readily apparent, it must be established by expert medical testimony. *See Makinson v. Indus. Comm'n*, 134 Ariz. 246, 248, 655 P.2d 366, 368 (App. 1982).

¶7 In this case, claimant needed to prove that the labral tear in her right hip was causally related to her October 15, 2008 industrial injury. She testified that she reported hip pain to both of the doctors that she saw at Concentra. There is no mention of right hip complaints in the October 15, 2008 record, but the October 20, 2008 record notes a "hip strain," and physical examination of the right hip revealed: "There is no pain on passive range of motion testing. Full range of motion. Popping associated with circumduction of hip with ROM. No pain." Claimant testified that, although she returned to her regular work, the popping, clicking, and pressure in her right hip continued, and over the ensuing four years became unbearable. She sought treatment from Drs. Aschenbrener and Toth in September 2012. She stated that injection therapy recommended by Dr. Toth improved her pain for the first time since the industrial injury. An MR arthrogram revealed a tear in the right hip labrum, which was surgically repaired by Dr. Toth.

¶8 At the ICA hearing, claimant did not call Dr. Toth, but presented testimony from Dr. Aschenbrener. He first saw claimant on September 24, 2012, for right knee pain. When she mentioned hip pain to him, he sent her for an MR arthrogram and referred her to his partner, Dr. Toth, because Dr. Aschenbrener did not treat hips. At the ICA hearing, the doctor was given a history on claimant's hip strain and popping sensation, development of "unbearable" hip pain over a four-year period, and relief following hip injections.

4

Q. [By Mr. Montrose] . . . If that's the situation, do you think it's probable or more likely than not that the industrial mechanism played at least some part in the hip pathology?

A. [Dr. Aschenbrener] I mean once again, you're not talking to the hip expert. I didn't operate on her. So I'm not sure why my testimony is important in this matter. I'm a shoulder and knee surgeon.

* * * *

A. I mean it's possible from a mechanical standpoint but, I mean I wasn't in her hip operating. I didn't see what . . . the extent of the tear was.

JUDGE MARWIL: Are you able to say to a reasonable degree of medical certainty . . . which is simply 51 percent more likely than not that her hip problems are related to her industrial injury?

THE WITNESS: I can't.

Although the doctor's testimony was insufficient to establish causation between the accident and the labral tear, he went on to state that it was "probable" that the 2008 injury "could have caused" the tear.[3]

¶9        By contrast, Dr. Theiler received a history of the 2008 industrial injury and reviewed claimant's Concentra medical records; a June 2009 emergency room visit record for right foot and leg pain; a January 2011 urgent care visit record for complaints of pain in the ankles, knees, and hips; and Dr. Aschenbrener's records. He opined the labral tear/hip pathology was not related to the industrial injury.

---

[3] A claimant must establish his medical condition to a reasonable medical probability. *Honeywell v. Litchett*, 146 Ariz. 328, 331, 705 P.2d 1379, 1382 (App. 1985). Probability is something more than fifty percent. *State Comp. Fund v. Indus. Comm'n*, 24 Ariz. App. 31, 36, 535 P.2d 623, 628 (1975).

Q. [By Mr. Houston] And why is that?

A. [Dr. Theiler] A couple of reasons. The mechanism of injury would not appear to support an acute right hip pain, although I fully acknowledge that the mechanism of injury was somewhat unusual. 2., she presented with initial complaints of ankle pain. No mention of hip pain. Hip pain did not occur until significantly later. She did report some clicking in her hip which was non-painful. And there's no mention of any significant primary hip pain complaints then until what appears to be a significant time later depending on which medical records are reviewed.

¶10        The ALJ is required to resolve all conflicts in the evidence and to draw all warranted inferences. *See Malinski v. Indus. Comm'n.*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). The Arizona Supreme Court has recognized that:

> [m]any factors enter into a resolution of conflicting evidence, including whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications [and] backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred.

*Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988).

¶11        In this case, and to the extent that there was a conflict between Dr. Aschenbrener and Dr. Theiler, the ALJ resolved the medical conflict in favor of Dr. Theiler. Claimant argues, however, that Dr. Theiler's opinion was legally inadequate to support the Award, because his testimony was equivocal. She bases her argument on the doctor's responses to hypothetical questions on cross-examination.

> JUDGE MARWIL: But the question was if you just assume that all we had was her testimony that she had suffered continuing unrelenting hip pain from the date of the injury until she

saw Dr. Toth, could you opine to a reasonable degree of medical probability regarding contribution or causation?

THE WITNESS: If all I had was her testimony stating she had severe hip pain from the date of injury that persisted four years later, without any medical records available at all, one would have to assume that if an injury was accepted that the hip pain, it's possible that the hip injury occurred at the time of the event.

JUDGE MARWIL: Mr. Montrose?

MR. MONTROSE: Thank you. That was sufficient. Thank you.

¶12 Although Dr. Theiler initially resisted answering a hypothetical question that was factually inconsistent with the contemporaneous medical records, he did answer at the ALJ's behest. His answer was that it was "possible," given the hypothetical facts, that the 2008 injury had caused the labral tear. Because his response to the hypothetical did not rise to the requisite level of proof, it does not change the ultimate result.

¶13 An ALJ is not required to make a specific finding on every issue, as long as the ALJ resolves the ultimate issues in the case. *See Cavco Indus. v. Indus. Comm'n*, 129 Ariz. 429, 435, 631 P.2d 1087, 1093 (1981). We will not disturb the ALJ's findings and conclusions, including the assessment of the sufficiency of the medical opinion, unless they cannot be supported on any reasonable theory of the evidence. *See, e.g., Phelps v. Indus. Comm'n,* 155 Ariz. 501, 506, 747 P.2d 1200, 1205 (1987).

¶14 We find Dr. Theiler's testimony unequivocal and legally sufficient to support the Award. For that reason, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: gsh