NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIKE GOLAN, *Petitioner*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

LEE & CO., *Respondent Employer*,

ST. PAUL FIRE & MARINE INSURANCE CO., *Respondent Carrier.*

No. 1 CA-IC 14-0084
FILED 6-16-2015

Special Action - Industrial Commission

ICA Claim No. 96178-936687
Carrier Claim No. 127-CB-VMQ3069-T

Deborah A. Nye, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Crossman Law Offices, P.C., Phoenix
By Avery N. Crossman
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Lester, Norton & Brozina, P.C., Phoenix
By Steven C. Lester, Christopher S. Norton, Rachel Parise Brozina
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying a petition to reopen. On appeal, the petitioner employee ("claimant") argues that the administrative law judge ("ALJ") erred by finding that he had failed to prove an objective worsening of his industrially-related condition. Because the evidence as a whole establishes an objective worsening of claimant's condition, we set aside the award.

**FACTS AND PROCEDURAL HISTORY**

**¶2** On November 27, 1979, the claimant was working as a pipefitter for the respondent employer, Lee & Co. ("Lee"), when he slipped and fell injuring his left ankle. He filed a workers' compensation claim, which was accepted for benefits by the respondent carrier, St. Paul Fire & Marine Insurance Co. ("St. Paul"). Over the next thirty-five years, the

2

claimant's claim was reopened and closed numerous times for additional testing and treatment, including multiple surgeries and an ankle fusion. The most recent closure occurred on November 15, 2010, when the claimant's industrial condition was found to be medically stationary with a 51 percent scheduled permanent partial impairment of the left lower extremity.

¶3　　　　On September 6, 2013, the claimant filed a petition to reopen his claim and attached Gary J. Schmidt, M.D.'s medical records recommending a "total ankle arthroplasty."[1]　St. Paul denied his claim for benefits, and he timely requested an ICA hearing.　The ALJ held three hearings and heard testimony from the claimant, Dr. Schmidt, and independent medical examiner, Anikar Chhabra, M.D.　The ALJ then entered an award denying the petition to reopen.

¶4　　　　The award discussed the evidence received, which indicated that the alternatives to claimant's chronic pain were either ankle replacement surgery or "a below-the-knee amputation."　In addressing Dr. Schmidt's testimony, the award states "[w]hen asked if there had been an objective change to [claimant's] condition since 2010 he replied that he 'couldn't objectively measure' any change without seeing x-rays or CT

---

[1]　　"Arthroplasty" is a surgical procedure to relieve pain and restore range of motion by realigning or reconstructing a joint, including total joint replacement with an artificial prosthesis.

scans from 2010, though he imagined that [claimant] was worse now than before." The ALJ denied the application to reopen, concluding that "neither doctor was able to confirm that [claimant] has objective evidence of a new, additional or previously undiscove[re]d condition causally related to his industrial injury or treatment sequelae."

**¶5** The claimant timely requested administrative review, but the ALJ summarily affirmed the award. The claimant next timely sought review by this court, which has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rules of Procedure for Special Actions 10 (2009).

**ANALYSIS**

**¶6** The statutory requirements for reopening are found in A.R.S. § 23-1061(H):

> [A]n employee may reopen the claim to secure . . . additional benefits by filing with the commission a petition requesting the reopening of the employee's claim upon the basis of a *new, additional or previously undiscovered temporary or permanent condition*, which petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim. . . . *A claim shall not be reopened because of increased subjective pain if the pain is not accompanied by a change in objective physical findings.* (Emphasis added.)

It is the claimant's burden to present sufficient evidence to support reopening. *See Hopkins v. Indus. Comm'n*, 176 Ariz. 173, 176, 859 P.2d 796,

799 (App. 1993). When the causal connection between the condition and the prior industrial injury is not readily apparent, it must be established by expert medical testimony. *Makinson v. Indus. Comm'n*, 134 Ariz. 246, 248, 655 P.2d 366, 368 (App. 1982).[2]

¶7        In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

¶8        In this case, the ALJ found:

> While the two doctors disagree whether an ankle arthroplasty is in [claimant's] best interest, the undersigned finds it is unnecessary to resolve that conflict at this time for the reason that neither doctor was able to confirm that applicant has objective evidence of a new, additional or previously undiscove[re]d condition causally related to his industrial injury or treatment sequelae.

---

[2]    The Arizona Supreme Court has stated that to reopen a claim, a claimant need only prove the existence of a new, additional, or previously undiscovered condition, and not that the condition requires "active" medical treatment. *Sneed v. Indus. Comm'n*, 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979):

> The medical benefits available or the appropriate treatment for the new, additional or previously undiscovered condition, as well as any adjustment or modification in the amount of compensation payable, or degree of disability established, can be appraised after the claim has been reopened.

The claimant argues that the medical evidence established the requisite objective change in condition to support reopening.[3]  In that regard, it is necessary to carefully review the testimony of Drs. Schmidt and Chhabra.

¶9        Dr. Schmidt first saw the claimant on July 25, 2013, on a referral because of his experience with "taking down ankle fusions and placement of ankle arthroplasty."  He received a history of the claimant's work-related ankle fracture, post-traumatic arthritis, and fusion.  The claimant complained of increasing pain, and the doctor performed a physical examination and obtained a CT scan.

¶10       As relevant here, Dr. Schmidt testified as follows:

> Q.  [Claimant's Attorney] And are you able to
> determine the cause of his pain?
>
> A.  [Dr. Schmidt] I think he's getting pain from
> his navicular cuneiform joints and his cuboid
> metatarsal articulations, which are the next
> joints down from the last ones he's had fused.
>
> . . .
>
> Q.  And is that uncommon for that to happen?
>
> A. No. That is what you see. *This is a natural
> progression. As you keep fusing these joints, you*

---

[3]       St. Paul argues that the ALJ rejected the credibility of claimant and, by implication, Dr. Schmidt, and resolved the medical conflict in favor of Dr. Chhabra.  Our review of the Award reveals that the ALJ made neither of these findings. This court will not imply the rejection of a claimant's credibility, *Joplin v. Indus. Comm'n*, 175 Ariz. 524, 528, 858 P.2d 669, 673 (App. 1993), and the resolution of conflicting medical evidence is the province of the ALJ, *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968).

*know, you have an ankle fusion, your subtalar joint gets arthritic. You do a subtalar arthritic arthrodesis or fusion, then the two joints in front of it, which are the talonavicular and calcaneal cuboid, they get arthritic, then you fuse those, well, now, the ones in front of them get arthritic. . . .*

Q. And back when his case was closed in 2010, the doctor [Chhabra] reported minimal arthrosis. *Do you believe that there's been a change in his arthrosis?*

A. *It will progress. It always does, yeah.*

Q. And was that confirmed on the CT scan?

A. *Yes. . . .*

Q. . . . And do you have an opinion to a reasonable degree of medical probability whether his physical condition has changed since 2010, when his case was closed with no further active medical treatment until today?

A. Well, one would - - *as we talked about earlier, the arthrosis is progressive in these cases, so I would imagine, you know, he is worse now than he would have been in 2010 or 4 years ago, yeah.* (Emphasis added.)

¶11    On cross-examination, Dr. Schmidt was asked whether there had been a "significant change" in the claimant's arthritic process between 2010 and 2014. He responded that it would be possible to measure the cartilage if he had a 2010 CT scan for comparison.

Q. [Employer & Insurance Carrier's Attorney] So you're speculating essentially that this is following the natural progression, but you haven't actually seen any scans or objectively confirmed that there's a difference in the arthrosis?

A. [Dr. Schmidt] *I don't have the x-rays or CT from 2010, so I couldn't objectively measure that cartilage interval. Those may exist. I don't know. However, someone with a pantalar arthrodesis will develop this arthritic change and it will get worse, so it is somewhat speculative but on pretty strong ground.* (Emphasis added.)

¶12    Dr. Chhabra testified that he performed independent medical examinations of the claimant on November 15, 2010 and April 24, 2014. He agreed with Dr. Schmidt that the claimant had "adjacent joint disease" as a result of the multiple, fused joints in his left foot. Dr. Chhabra also testified that x-rays taken during his 2014 exam revealed "arthrosis in the mid foot joints," i.e., "the joints that are anterior to the fused joints."[4]  But it was his opinion that there was no "significant objective change based both on physical exam or on radiographic findings from between 2010 and 2014."

¶13    The claimant argues that Dr. Schmidt's testimony establishes that his traumatic arthritis has worsened, which satisfies the statutory requirement for an objective change in condition. As Professors Larson have recognized:

> [t]he compensation process is not a game of 'say the magic word,' in which the rights of injured workers should depend on whether a witness happens to choose a form of words prescribed by a court or legislature. What counts is the real substance of what the witness intended to convey.

---

[4]    In this context, "arthrosis" means the presence of degenerative arthritis in the ankle joint.

12 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ("*Larson*") § 130.06[2][e], at 130-75 (2014). This court quoted this aspect of *Larson* in *Skyview Cooling Co. v. Indus. Comm'n*, where we recognized that when "magic words" are not used by the medical expert in stating an opinion, it is necessary for this court "to thoroughly and carefully review such testimony" to see if the burden of proof is satisfied. 142 Ariz. 554, 559, 691 P.2d 320, 325 (App. 1984).

¶14 In this case, we have thoroughly and carefully reviewed the medical records in the appellate record and the hearing testimony. We find that the substance of Dr. Schmidt's testimony conveyed his medical opinion that the claimant's degenerative arthritis in his ankle joint had, as was predictable, naturally worsened between 2010 and 2014 and was at least in part responsible for the claimant's increased pain. Although Dr. Schmidt conceded on cross-examination that his opinion was "somewhat speculative," this concession was directed to his present inability to measure the actual "cartilage interval," not his opinion that the claimant's arthritic changes had in fact progressed, and his medical condition worsened.

**CONCLUSION**

**¶15**　　　　For all of the foregoing reasons, Dr. Schmidt's testimony satisfied the statutory requirement for an objective worsening of the industrial injury. As a result, the sole evidentiary basis cited in the Award does not support the legal conclusion in the Award and it cannot stand. Accordingly, we set aside the Award.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama